May it please the Court, my name is Nancy Tenney, and I represent Mr. Ensyxiengmay. Say it again. Ensyxiengmay. Ensyxiengmay. Is the best that I can do with it. And I would like to reserve, excuse me, at least five minutes for rebuttal. I would like to begin this morning by addressing our motions to expand the record. We filed two motions. Most important, I believe, to consideration of Mr. Ensyxiengmay's claims are a review of the trial transcripts in this matter. In particular, the transcript of the in-camera hearing, which was one of the issues on which this court granted a certificate of appealability. The district court decided this issue without ever even reviewing that transcript. Also importantly, we moved to expand the record to include an affidavit from the confidential informant whose identity was the subject of that in-camera hearing, Mr. Kong Prack. We believe that the information contained in those documents is important to resolving the issues before this court. I guess that leads me to one of the concerns I have. If we get all the way through this, it's still difficult for me to see the prejudice involved and how the trial would have been different for Mr. Ensyxiengmay. And I understand, in part, Your Honor, I believe it's because the record, in particular, from the in-camera hearing is so incomplete and there were numerous flaws which impacted each other, resulting in prejudice. Well, you've seen it, right? Excuse me? You've seen the record, right? I have, yes. Okay. So give me your best case on why you think if that material had been disclosed, the outcome of the trial would have been different. I believe that Mr. Ensyxiengmay strongly considered testifying for himself, on his own behalf, regarding his intent when he entered the vehicle, that he was not the shooter, that he did not expect any shooting would take place, and that it was the responsibility of the others in the car. There was a great deal of effort on trial counsel's behalf to show that Mr. Misanse, who was given the plea bargain and prosecuted as a juvenile, he's now out of custody, and his plea bargain required that he take a polygraph exam and testify that Mr. Ensyxiengmay was the shooter. And trial counsel for Mr. Ensyxiengmay did everything they could to bring out the credibility issues with Mr. Ensyxiengmay, including the fact that he failed the polygraph given by the State, and that the State simply revised his plea agreement to take that requirement out. There were clear credibility issues. I understand all that. I guess, let me tell you what my concerns are, and maybe you can help me out with those. I mean, it seems to me Mr. Pratt was known to the defendants. They were friends, right? So this witness was known to defense counsel. And what you state in your brief is that if we had known about this witness, we could have brought out the conversations that he had with the defendant after the shooting, and the fact they were long-term friends. But that was already known, right, to the defendant anyway. So what would it have added to know that the confidential informant, not of the shooting, but the confidential informant that led to the arrest, how would that have changed the defense strategy? I guess that's what I'm having, I'm struggling to understand. And I understand, Your Honor. I think important was what was fought very hard for by defense counsel was a manslaughter instruction. And I believe that had Kong Pratt been available to the defense, they very well might have been given that instruction. Mr. Pratt was known to Mr. Ensyxiengmay, and it's clear in the trial record that defense counsel had attempted to locate all of the individuals who were present at the time of the co-defendant's arrest. And there were representations made to defense counsel that they had been given all information on how to contact these individuals. In the course of the in-camera hearing, the trial court specifically asks Deputy Cassio, since the informant was never produced, do you have an address, a phone number, contact information for these individuals? He says, you have the address, the last address that I have. What he doesn't say is, I know this individual is in a job court program in another State. He knows that these defense counsel are not going to be able to locate this individual. He doesn't provide that information. And trial counsel made clear they had tried to locate those individuals. Let me ask you about two other aspects that relate to Judge Thomas's question. Did he know or would he have known, had he been permitted to attend or cross-examine or submit questions, that this Mr. Crack had been cooperating with the police and providing information about the gang even prior to the shooting, and had that whatever he had – did they know that he was a police informant? None of the defendants knew that he had been a police informant. That they would have learned. And then secondly, did they know that he had talked to the police officer who had told him that someone else had claimed – had committed being the shooter? They had none of that information, Your Honor. And there – did they have any reason, therefore, to question Mr. Crack about those things since he hadn't been a witness to the offense and they had no particular reason to think he had significant knowledge? They had no reason to think he had significant knowledge, in particular, that he had provided any information to police officers. Trial counsel had tried to locate Mr. Crack and the other individuals who were present when one of the co-defendants was arrested because it was part of their suppression motion that there had been some police misconduct at the time of the arrest. And that was the reason that efforts had been made to locate Mr. Crack, and unsuccessfully, as unbeknownst to them, he had moved out of State by that time. So the affidavit you want to tender, what would Mr. Crack have testified to at trial? Mr. Crack would have testified that he had a discussion with Deputy Cascio, the police officer responsible for the arrest of all the individuals, and took part in taking statements from all three co-defendants. Mr. Crack would have testified that essentially Deputy Cascio stated that Mr. Misance confessed that he had been the shooter, that it was not Mr. Nsisingme who was the shooter. He also would have testified regarding his interactions with Mr. Nsisingme following the shooting incident, but prior to any arrests, and to the gang members' recounting of what had happened that night. And in particular, to Mr. Nsisingme's intent when he had entered the car that night. Had Mr. Nsisingme testified, he would have stated that he got into the vehicle with no expectation that any shooting would take place, and that would could have been supported by the testimony of Mr. Crack. Would, let me ask you another question. Would Mr. Nsisingme's conviction have stood, even having not been the shooter? I believe that his conviction for first-degree murder would not stand if he had not been the shooter, and if the evidence that we are suggesting should have been presented had been presented. As I said, defense counsel requested repeatedly for an instruction on manslaughter, on reckless indifference, as opposed to any type of premeditated murder, and that that is perhaps a more appropriate charge for Mr. Nsisingme's conduct. This is not a case of actual innocence. He doesn't dispute that he was present. What was crucial at trial is what was his intent, and what were his actions once he did get into the vehicle that night? Now, I assume that you wouldn't really expect a reversal at this stage, that what you would obtain if you were successful is an evidentiary hearing. I believe that may well be appropriate, Your Honor, given that we have moved to supplement the record and that there, Mr. Nsisingme was never given an evidentiary hearing during the State appellate proceedings. It may well be appropriate to hold an evidentiary hearing to allow him to develop these issues further and to supplement the record. And you think you can produce, Mr. Pratt? Excuse me? Do you think you can produce Mr. Pratt right now? Yes. We have had contact with Mr. Pratt, and he remains available and certainly willing to testify. I'd like to address the last one final question. Are you suggesting, then, if, as a result of the evidentiary hearing, all of this information comes out that your client is willing to testify? I believe he certainly would, Your Honor. One of his claims, it's not included in the Certificate of Appealability, but I think relevant to any harmless error analysis and certainly well developed in the pleadings, is that Mr. Nsisingme was debating whether or not to testify at the close of the evidence. The trial court gave a brief recess of approximately 20, 25 minutes, and at which time, when court reconvened, Mr. Nsisingme chose not to testify. It's important to remember he's a 15-year-old boy who had never been in a criminal trial before. He, no doubt, was very confused when the court, just prior to closing arguments, counsel moved to reopen the testimony to allow Mr. Nsisingme to testify. And he outlines in his pleadings what his testimony would have been, basically talking about his involvement in the gang and, in particular, his intent and his intention in the shooting incident. I would just briefly like to address the right-to-counsel aspect of the in-camera claim. The issue is not the Roviaro issue of whether or not Mr. Nsisingme had a right to know who the informant was. It addresses the interference with the attorney-client relationship, and such a claim has the presumption of prejudice once that violation has been established. The State court, the district court in this matter, did not address this aspect of the claim. The State court, while it talked about a Sixth Amendment aspect of this claim, simply did a Roviaro analysis. And so I, therefore, think it's certainly contrary to the governing precedent of interference with attorney-client privilege set forth in Getters and Chronic and, most recently, in Perry v. Leek. And, again, as with the due process and confrontation aspect of this claim, the court then just simply looked to the hearing in this case, which was recognized to be constitutionally flawed, where the informant wasn't presented, counsel weren't allowed to discuss the issue with their client, defense counsel wasn't allowed to be present at the hearing, wasn't allowed to submit questions, and the trial court asked very limited questions of the police officer whose misrepresentation in his police report was the very basis for the hearing. So we certainly say that that decision is both contrary to the governing precedent and based on an unreasonable determination of the facts in light of the evidence presented. Also, I think significant with respect to that claim is prior to holding a Roviaro hearing, there's supposed to be some showing on the part of the State that there's an informant whose identity needs to be protected. And without ever bringing the informant to court or interviewing the informant, that was never even established such that the – it brings into question the very basis of the hearing. Well, there's not much doubt that this is the type of informant whose identity you'd want to protect, is there? I think at this point, having located Mr. Prack and spoken to Mr. Prack, we know that. However, at the time and in the record before the State trial judge and defense counsel argued quite vigorously, we have no information who this person is, what their role is, that they have any fear on behalf. And, in fact, as it turns out, he had relocated to another State. He might well not have felt the same fear or concern had his identity been released. And we simply – We'd better get on to the other issue. There are three other issues, I believe, the three other claims where the question is whether there's a procedural bar or failure to exhaust. And one of your claims is the mailbox rule, which – one of your procedural issues, which would affect all three of those claims. And as I understand your position, the question is whether the Washington law was unclear or uncertain as to whether they enforced a procedural bar when there was compliance with a mailbox rule they had their bid on. The rule now in Washington is there is no mailbox rule. Is that right? That is correct. That was established after this appeal in this case. Now, as of the time of this case, the question is was the law clear. And as I understand your position is there were two conflicting court of appeals decisions. That's correct, Your Honor. The reason that the Washington Supreme Court decided in Ray Carlstad in 2003 was because there was a conflict between the divisions of the Washington courts of appeal. In State v. Robinson in Division I, they had rejected adopting the mailbox rule, whereas both Division II – there were Division II decisions which did adopt and were in violation of the mailbox rule. So there was a clear – But those – excuse me for a second. Those decisions were entered after the conviction in this case, right? That is correct. So I – what was the state of the law, or what can you tell us about the state of the law at the time the case was tried? I can say that the law was obviously not well established, and that there was no guidance from the Washington Supreme Court. Okay. I should correct that. It's at the time that the habeas petition was – Of the appeal. Sorry about that. Our position is that there was not a consistently applied rule, as shown by the different outcomes later in the – in the courts of appeal. Well, did the court of appeals decision that adopted the rule, did it say that the rule had been applied in – in any of the courts up to that time, or did it just adopt it as a new provision that was a change in practice? They recognized that there had been previous courts that did not accept the rule, and they relied primarily on the Federal rule, which is to accept the mailbox rule. Was there – can you point to any case prior to the filing of the second personal restraint petition that allowed or adopted the mailbox rule in Washington? I – I can't off the top of my head, Your Honor. So what is your best argument that Washington did not consistently enforce their existing rules at that time? Well, Your Honor, the State bears the burden of showing that this is a consistently applied and well-established rule. And again, I rely on the fact that it was not until 2003 that the Washington Supreme Court set and answered the question as to whether or not this rule should be applied and how it should be applied in Washington State, that there simply wasn't an answer to that question until that time. Well, the State disputes that they have the burden. So if it gets down to burden-shifting, do you lose? I don't believe we lose, Your Honor. I do believe we lose. What's your best case that, as of that time, there have been inconsistent approaches on the mailbox rule in Washington? Well, simply by the fact that there are cases that, in looking at the law and the state of the law, in later cases, allowing and coming to the conclusion that the mailbox rule should apply. Let me ask my question in a different way. I gather what you're saying is that the absence of any decision can form the basis of our conclusion that the law wasn't consistently applied. Is that right? I believe that's correct. What's your best case that says that? I don't have a case off the top of my head to address that, but I believe that just the general principles of procedural, of the procedural law would support that. And I'll reserve my remaining time for rebuttal. Thank you. May it please the Court. I am John Sampson, Assistant Attorney General, representing the Respondent. The district court correctly denied the petition, and I would like to address first the procedural bar issue that was just addressed by Petitioner, and then I will talk about the issue of the Inkhammer review. The procedural bar is clearly established, and it was consistently applied at the time of the procedural default. The published cases relied on by Petitioner, the State court of appeals that created a mailbox rule, did not exist at the time of the procedural default. And under this Court's decisions in Cockett v. Ray and Vang v. Nevada, because they did not mislead the Petitioner into defaulting, they are not relevant to the issue. The court of appeals, the State court of appeals did create a new rule in the case decided by Petitioner. They adopted and applied the federal mailbox rule, and the State supreme court made a reverse saying, no, we have long held in our court rule 18.6 of the rules of Washington appellate procedure have clearly stated that for a petition to be actually be received. So what do you make of the California court of appeals statement in State v. Hurt, which says, goes through the analysis and says that, describing the rule, it only says that the motion should be made within a reasonable time, further subject to the statutes, which in turn say that the collateral challenge must be filed within one year after which the judgment can be filed. It does not define filing or specify that the filing must be made with the court or any particular place. That statute did not, but a separate court rule did define filing. In the court rule 18.6 and also WRAP 16.17 clearly stated prior to this case coming about. So you think they just, the court of appeal got it wrong in State v. Hurt? Yes, Your Honor. Yes. And that's what the Supreme Court's State v. Hurt said, yes. And I gather your position, if we're faced truly with a situation where there's no law, it's a case of first impression, do you think that that's, which way do you think that augurs for you or for the defense in terms of whether there is a consistently applied law? Under this Court's decision in Bennett v. Mueller, I believe is the case, that created the burden-shifting rule. The burden initially rests on the Petitioner to show inconsistent application. And Petitioner cannot come forward with any case showing inconsistent application at the time of the procedural default. Therefore, at the time of the procedural default, they fail on their initial burden. The State has no burden whatsoever. Thank you. I understand you're not conceding that point, but respectfully disagreeing with it. Yes, Your Honor. Even if this Court were to conclude that there was an inconsistent application, the Petitioner still has not exhausted the claims because he never presented them to the Washington Supreme Court in, and this is Claim 1, Claim 2, and Claim 6. He did not fairly present them. At the best, what he did was he put them in an appendage to his motion for discretion and review. And as the Supreme Court held in Baldwin v. Reese, that type of incorporation by reference to the brief. So Baldwin v. Reese says you can't attach something to your petition? I know that you can't incorporate by reference, but that usually refers to a document that's not before the Court. That usually refers to some other document. The Supreme Court has said it must be in the body of the brief, not in an appendix to the brief? That is correct, Your Honor. What happened in the Baldwin case was they had essentially attached the court of appeals decision, and the this Court held that by the State court reviewing the court of appeals decision that was attached to the petition, that court would have seen the issue and that satisfied fair presentation. What happened in this one, in the Petitioner's case here, is that he never raised the claim in the body of his petition, as he was required to do under State law. State law required him to do it. He said, I'm also raising the claims set forth in this attached petition. And that is not sufficient under State law, and it's not sufficient under Baldwin. Well, it seems to me there's a difference between attaching a court of appeals opinion and, you know, then saying, well, there's an opinion which presents issues, and saying in the body, I'm also raising issues which are I'm presenting in a petition that's attached as an exhibit. In Washington State, the State supreme court, in both its court rules and its published opinions, has clearly said that to raise an issue before the State supreme court, you must identify it in the statement of issues in the beginning of the – of either the motion or the petition. And you must specifically identify those issues and present argument. You cannot incorporate by reference from another brief. You have to put those in the pages that you have your petition or your motion. So under State law and under Baldwin v. Reese, it's Respondent's position that he did not properly exhaust, even if the court were to find that the procedural bar is not consistently applied, which we contend that it is. I see. Moving on to the merits of the one claim that is before this Court, the district court correctly denied relief because the Petitioner has not shown any prejudice. And the important fact is that in the district – Shouldn't he have a hearing in which he can establish the prejudice? No, Your Honor, because he does not get two bites of the apple. He had his chance in the district court to prove prejudice. He did not do so. He did not submit the affidavit that he now relies upon by Mr. Pratt that was not created until after the district court proceedings were over. He failed to prove prejudice. This Court has no obligation to remand it, and he has no entitlement to remand for a second chance to prove his claims. But even if the court were to consider Mr. Pratt's affidavit, it is still not sufficient to show prejudice. The majority of the information contained in his affidavit is hearsay. It's hearsay or it's double hearsay. One person saying, this detective told me that some unknown person has confessed to being the shooter is not admissible evidence. The statements that the Petitioner told me that he wasn't the one who pulled the trigger is not admissible evidence. It's hearsay. Well, now, under, as I read, Washington Rule of Evidence 801-D-1-2 in conjunction with Federal Rules of Evidence 801-D-1, it seems to say an informant's recollection of an appellant's prior statement, if it had been available, would be a non-hearsay statement consistent with his trial testimony, both offered to be but a charge of recent fabrication or improper influence or motive. So would it really have been hearsay? I would submit that it is, Your Honor. I would submit because it's not being used to rebut anything. It's a prior consistent statement. I mean, if he takes the stand, I think the way the argument goes is this, that if they had known they could buttress his testimony with a prior consistent statement, then he would have taken the stand and then put Pratt on to provide the prior consistent statement, which would have bolstered his evidence, or bolstered his case. I gather that's what the other one is. So under that circumstance, why would it be hearsay if it's a prior consistent statement? If it's a prior consistent statement being used to rebut an allegation of recent fabrication, but there is no initial statement by Mr. — by the Petitioner that it could be used to come in and to bolster. And I guess we're getting somewhat away from the fact that this — that particular statement that the Petitioner said to Mr. Pratt, he already knew, the Petitioner already knew that he allegedly made this statement. So the failure to disclose the informant's identity does not cause the prejudice attached to that statement, since the defense was already aware of this statement. It's — the error did not create that. Well, Mr. Crack's a lot more reliable and important a witness to the defense if he's an informant the police have been working with than if he's just a fellow gang member. Your Honor, the issue, though, is whether the exclusion of the defense from the hearing was constitutional error, and whether that itself prejudiced the defense, and the Supreme Court — and I would submit to the Court that the Supreme Court's holding this area are not very broad, and the Petitioner's attempt to rely on circuit court opinions to — to further expand the opinions are not proper under 2254d. But the test — the Supreme Court, in the closest case we have, Roberio, said, does the informant's possible testimony — was it highly relevant? And might it been — and might it have been helpful to the defense? And the fact that he was an informant where his name was never mentioned really in the case in chief and in the trial presented to the jury, and he was not a participant in the crime, and he had no direct observations of Mr. — of the Petitioner prior to or immediately following the crime, he did not have any real evidence that could have come in and assisted the defense. In the case that the defense relies on, the D.C. Circuit in Nolia, that case, there was an informant involved in an entrapment defense, and the Court said, where you have a viable entrapment defense, there's an error. On the other hand, the other defendant — and there were two defendants in that case — there was no error because they didn't show that it really — that his identity, the identity of the informant, really went to the second defendant. Similar — The question might be a little narrower, though, and the question may not be whether reversal is warranted, but whether or not he's entitled to an evidentiary hearing on that, because he didn't get one on either the state level or federal level. And it may well be that this thing comes out, that there's no impact. But tell me, why isn't there enough of a — why haven't they met the threshold for an evidentiary hearing on it? Because he has not met that burden in the district court on his first opportunity. The affidavit that he has now presented on appeal was never presented to the district court, and to get an evidentiary hearing — Did he have counsel in the district court? No, he did not, Your Honor. But that fact does not alter the fact that he failed to present this affidavit to the district court. And as this Court has stated in State v. — or Morris v. State of California, it's the Petitioner's burden to come forward with confident evidence. When was he informed that Mr. Crack was the confidential informant? I am not sure of that fact, Your Honor. I do not know. And I don't believe — Did the State ever tell him? I — not in the trial court proceedings and not on direct appeal when this issue was raised. I gather the real prejudice here, if there is any, is slightly different. It's not — it may or may not — I mean, in this case, we don't have a confidential informant as a recipient witness, as you pointed out. On the other hand, they're trying to find this witness to try to put him on, and the State knows where the witness is. And the address, or at least what should have been — if they have done that, they probably would have tried to get him back in and put him on the stand. That might have changed their trial strategy. I grant that much. How much? I mean, just as a threshold, even without the affidavit. Why isn't that enough? Well, Your Honor, I believe that the detective answered honestly when they said that you have my last known address. The fact that he's in another State, and let's say the detective says, I think he's in another State, how does that — Well, not just another State. They knew who he was working for, who his employer was. But even that fact, Your Honor, would not be sufficient to make him a material witness. The — Well, they thought he was material. I mean, it's a slightly different question, perhaps. The defense really wanted — apparently wanted to call this witness and couldn't find him. And the prosecution knows where the witness is and then reveals in camera that the witness is, in fact, an informant, and they're trying to protect him. It's — through that, if, in fact, his testimony could have been material — The only thing that he could have said under the affidavit presented to this Court is if the petitioner actually testified, and then there was — the prosecution presented evidence to show that he had made a recent fabrication of his testimony, then under 801D, that little bit could come in. That is not enough to show that he would be highly relevant or helpful to the defense because it is pure speculation that we would even get that far. It's speculation that he would have testified. It's speculation that he would have needed to corroborate his prior — or his testimony with a prior consistent statement. That is not enough under this. And again, the scope of review is limited under 2254D to Supreme Court holdings. And there are no Supreme Court holdings that reach this far as the petitioner wants this Court to reach. Finally, I would ask this Court, in considering the issue of prejudice, to keep in mind that the petitioner was cited entering — there was testimony that the petitioner entered the car with the rifle, that he — there was testimony that he fired the rifle, and there was testimony that when he returned, he said, we shot them up, we shot them up, we shot them up. His claims that — I didn't know what was going to happen. I had no idea that there was going to be a shooting. It simply failed in light of the testimony that was presented at trial. And I believe Your Honor had a question whether he could be convicted even if he wasn't the actual shooter. And I apologize, I have not recently reviewed the jury instructions, but I believe that under Washington's accomplice law, he could be convicted even if he was not the actual shooter as long as he had knowledge that the shooting was going to occur. And in light of the evidence presented, he certainly had that knowledge. We would ask that the Court affirm the district court's ruling. Thank you, Captain. Thank you. Briefly, Your Honors, with respect to the issue of whether the three claims are exhausted, Mr. Ntsisime did not simply try to incorporate by reference. He attached his brief, which set forth specifically what his claims were, and his arguments in support of them. What he had in the body of the brief to the Washington Supreme Court addressed the Court of Appeals' decision, which dismissed all of those claims, which implicitly includes the underlying claims themselves. And secondly, with respect to whether Mr. Prack could have provided information helpful to the defense, I think it's not only his potential trial testimony, but had trial counsel interviewed Mr. Prack prior to the trial and heard a statement that one of the co-defendants confessed to Deputy Casio to being the shooter himself, it no doubt would have spurred a great deal of further investigation. The defense theory at trial was that Mr. Ntsisime was the shooter, not Mr. Ntsisime, and it went to the very heart of the trial and certainly was very, very prejudicial that they did not have access to this individual. How do you think you could have gotten that into evidence, though, with a hearsay? That is against a hearsay. Well, I think it certainly could have been presented to impeach Mr. Ntsisime to ask him, did you confess to Deputy Casio to being that you were, in fact, the shooter? And they could have asked that question with a good-faith basis based on Mr. Prack's testimony, not to mention there's a statement that Mr. Casio made the statement to Mr. Prack. There could have been investigation. Were there other individuals present? Were there other individuals who would have heard this confession? Could have been a great deal of investigation to find out the source of that statement and the truthfulness of it. Thank you, Your Honor. Thank you, counsel. The case just argued will be submitted. The final case for argument this morning...
judges: D Nelson, Reinhardt, Thomas